# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLAIR WINTERMYER AND MYSTERY WINTERMYER<br><br>*Plaintiffs,*<br><br>v.<br><br>MEYER'S RV CENTERS, LLC d/b/a MEYERS RV SUPERSTORES and REV RECREATION GROUP, INC.<br><br>*Defendants.* | No. _____<br><br>Civil Action<br><br>JURY DEMAND |

## COMPLAINT

COMES NOW, Plaintiffs, Clair Wintermyer and Mystery Wintermyer (collectively the "Wintermyers"), by and through their undersigned counsel, Barley Snyder, and file this Complaint against Defendants, Meyer's RV Centers, LLC d/b/a Meyers RV Superstores ("Meyers RV Superstores") and REV Recreation Group, Inc. (collectively "Defendants") and allege as follows:

## PRELIMINARY STATEMENT

1. This is an action for breach of various duties Defendants owed to Plaintiffs relating to Plaintiffs' purchase of an RV from Defendants. Plaintiffs bring their claims pursuant to the Uniform Commercial Code §§ 2-313 and 2-314, the Pennsylvania Uniform Commercial Code 13 Pa.C.S.A. §§ 2313 and 2314, the Magnuson Moss Warranty Act 15 U.S.C. §2301, the Pennsylvania Unfair Trade Practices and Consumer Protection Law 37 Pa. Code §301.2, and a common law negligence.

2. Plaintiffs seek $103,827.96 and all other relief this Court deems appropriate.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the laws of the United States.

4. This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) to adjudicate the state law claims, as those claims derive from a common nucleus of operative facts.

5. Venue is proper in the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391, as Defendants operate their business in this district and a substantial part of the events or omissions forming the basis of this action occurred in this district.

## THE PARTIES

6. The Wintermyers are adult individuals and residents of the Commonwealth of Pennsylvania, residing at 2770 Lewisberry Road, York Haven, PA 17370.

7. Defendant Meyer's RV Centers, LLC d/b/a Meyers RV Superstores is a Pennsylvania limited liability company with its principal place of business at 7301 Allentown Boulevard, Harrisburg, PA 17112.

8. Defendant REV Recreation Group, Inc. is a foreign business corporation with a principal place of business at 1031 US 224 East, Decatur, IN 46733.

## FACTS

9. On or about September 13, 2018, Plaintiffs purchased a brand new 2019 Holiday Rambler Admiral 29M at the Hershey RV show from Meyers RV Superstores, an authorized dealer and warranty repair representative of REV Recreation Group, Inc. (the "RV").

10. The purchase price of the RV, inclusive of sales tax, was $95,035.96. The Wintermyers also purchased a motorized service agreement for $6,822.00, a roadside assistance plan for $1,895.00, and a dealer processing fee in the amount of $75.00. In total, the Wintermyers paid $103,827.96 for the RV.

11. The Defendants provided the Wintermyers with a written warranty for the RV, and an excerpt of such warranty coverage is attached as Exhibit A.

12. The RV exhibited significant problems beginning on the day the Wintermyers picked it up from Meyers RV Superstores. Specifically, on September 21, 2018, while driving home on Interstate 81, the side doors of the RV suddenly opened, obviously creating a dangerous situation. On that same day, the Myers RV Superstores told the Wintermyers that they removed the hubcap and put it on another RV.

13. Furthermore, when the Wintermyers started to winterize the RV, they noticed they were not able to connect the sewer pipe to septic receptacles—a necessary step to winterizing the RV. They also noticed the following: that the trim along the step was lose; the driver's side front cargo door would not latch; the driver's side heater door did not latch on the outside; the rear double closet door would not close; and a water line was pinched.

14. The Wintermyers notified Meyers RV Superstores of these problems and were directed to drop the RV off at Meyers RV Superstores' Harrisburg location for a January 7, 2019, service appointment.

15. On January 7, 2019, on the way to Meyers RV Superstores' Harrisburg location, it started to rain. As a result, the Wintermyers, attempted to use the RV's windshield wipers for the first time, but they did not work and created a dangerous situation. On that same trip, the

Wintermyers also noticed that the driver's side seat would not move and the motorized mirrors did not work.

16. Meyers RV Superstores retained the RV for over a month, making these repairs from January 7, 2019 until February 15, 2019.

17. When the Wintermyers picked up the RV on February 15, 2019, the technicians at Meyers RV Superstores advised the Wintermyers that all the problems identified with the RV had been fixed.

18. To the contrary, on the way home from Meyers RV Superstores, the RV began to shake very badly when it reached 70 MPH. The Wintermyers also noticed that the Meyers RV Superstores' technicians had installed the hubcap improperly on the RV's rear driver's side wheel and damaged it.

19. The Wintermyers notified Meyers RV Superstores about the aforementioned shaking and damaged hubcap. Meyers RV Superstores ordered a new hub cap.

20. Before the Wintermyers went to Port Royal, Pennsylvania for a camping trip, the Wintermyers removed the damaged hubcap to avoid any problems. After removing the hubcap, the Wintermyers noticed that two of the lug nuts (on the wheel where the hub cap was to be replaced) were loose from when Meyers RV Superstores had performed repair work on the RV from January 7, 2019 until February 15, 2019. This too obviously created a dangerous situation.

21. On the way to Port Royal, the RV, again, shook very badly and, while camping, the RV's awning arm suddenly broke.

22. Accordingly, the Wintermyers called Meyers RV Superstores on April 13, 2019, and notified them of the shaking and broken awning.

23. Meyers RV Superstores requested that the Wintermyers drop the RV off again for repairs and on April 15, 2019, the Wintermyers did so. The Wintermyers also provided a list of things that were still wrong with the RV to a Meyers RV Superstores' technician. This list of problems included the broken awning, loose tile on the backsplash, a black tank flush system that leaked when it was on, poor radio reception, the RV was shaking very badly, the VIN number on the plate was damaged, the RV's refrigerator only worked when the generator was on, there was water leaking from the RV's kitchen area, the RV's rear emergency window exit would not latch, the wood underneath the RV's bathroom sink was loose, and the board underneath the RV's bed was broken.

24. Meyers RV Superstores claimed to have fixed these items when it dropped the RV off at the Wintermyers' home on June 4, 2019. Notably, the employee that dropped the vehicle off identified that the RV was still shaking, but was better. He wanted the Wintermyers to test drive it.

25. To the Wintermyers' dismay, the RV still had significant problems despite the fact that Meyers RV Superstores claimed that it had fixed them. The Wintermyers once again complained to Meyers RV Superstores about significant issues relating to the RV. Accordingly, Meyers RV Superstores picked up the RV at the Wintermyers' home on June 25, 2019.

26. At the time of pick-up, the Wintermyers again gave Meyers RV Superstores a list of items that were still wrong with the RV, which included a leak in the hose on the RV's water supply line, a leak in the RV's kitchen area, the RV's bathroom door did not lock, the trim in the RV's bathroom needed to be fixed, the RV's outside sink area had a vile smell, and the RV's cargo door did not latch. The Wintermyers did not list the shaking problem because they did not have a chance to test it before Myers RV Superstores picked it up.

27. Adding insult to injury, on June 28, 2019, a representative of Meyers RV Superstores contacted the Wintermyers and told them that the RV had been in an accident while it was in Meyers RV Superstores' care. Specifically, Myers RV Superstore claimed that one of its employees had backed another RV into the Wintermyers' RV and broke the window and grill of the Wintermyers' RV.

28. The Wintermyers later discovered that the accident had actually happened on June 27, 2019, but Meyers RV Superstores waited almost 24 hours to report the accident to the Wintermyers.

29. The Wintermyers also discovered that the damage to the RV was much more extensive than just a broken window and grill. Indeed, the RV sustained major body damage and required collision repairs.

30. Specifically, Meyers RV Superstores drove the RV to Noakers Body: Accident and Repair Service in Duncannon, Pennsylvania for collision repairs. Noakers Body: Accident and Repair Service indicated that it would take 4-5 weeks to repair the damages the RV sustained.

31. Nine weeks later, however, the Wintermyers still were not in possession of the RV, as Noakers Body: Accident and Repair Service was still repairing the vehicle. Accordingly, the Wintermyers, through their undersigned counsel, demanded that Meyers RV Superstores work with Noakers Body: Accident and Repair Service to have the RV repaired within a week, making the demand deadline, Friday August 30, 2019. This demand provided Meyers RV Superstores with approximately 10 weeks to complete the repairs.

32. On August 24, 2019, Meyers RV Superstores informed the Wintermyers that it would not be able to have the RV repaired by the August 30, 2019, deadline and advised that the

RV would not be ready until the end of September or middle of September at the earliest. Myers RV Superstores, however, offered to finish the RV repairs by September 13, 2019, at its own body shop in Churchville, New York, which would result in the RV incurring approximately 800 miles roundtrip.

33. Given Meyers RV Superstores' history with the RV, including causing major body damage while the RV was parked, the Wintermyers rejected that offer.

34. On September 25, 2019, Meyers RV Superstores informed the Wintermyers, through counsel, that the RV was fully repaired.

35. The Wintermyers arrived at Meyers RV Superstores on September 30, 2019, and upon a simple visual inspection, the Wintermyers noticed issues that still had not been fixed. Specifically, a scratched up emblem on the hood was never replaced and the windshield defroster was not hooked up. While Mr. Wintermyer was going over the repairs with a Meyers RV Superstores representative, the representative checked the windshield wiper bracket. In doing so, a bolt fell into Mr. Wintermyers' hand. Mr. Wintermyer then handed the bolt to the representative. Myers RV Superstores retained possession of the RV to continue its repairs.

36. On October 1, 2019, Meyers RV Superstores again informed undersigned counsel that any issues with the RV had been resolved and that the RV was ready for pick up.

37. However, on October 21, 2019, when the Wintermyers went to pick up the RV, the bolt to the bracket was never replaced. The nut that fell from the wiper bracket when the Wintermyers visited on September 30, 2019, was still in the same place. Accordingly, the Wintermyers left the RV for Myers RV Superstores to continue its repairs.

38. On October 22, 2019 Myers RV Superstores dropped the RV off at the Wintermyers' home. Upon inspection of the windshield wipers, the Wintermyers noticed that

the passenger side sprayer would not work. While checking the sprayer, the passenger's side wiper fell off. The Wintermyers informed Myers RV Superstores of that defect and Myers RV Superstores came back out and repaired the same.

39. Also on October 22, 2019, during heavy rain, the Wintermyers checked the RV's defrosters and discovered significant water in the RV. Accordingly, the Wintermyers called Myers RV Superstores about the leaking. On October 26, 2019, Myers RV Superstores picked up the RV to repair the leaks.

40. Nearly a month later, on November 20, 2019, Myers RV Superstores returned the RV to the Wintermyers' home.

41. However, the RV was still experiencing severe vibrations at speeds between 55-60 MPH. Additionally, the right hand part of the dash board made a constant cracking type noise, the back door where the closets met still did not work properly, the middle defroster vent blew out very little air, and the windshield still leaked. The Wintermyers, through counsel, notified Meyers RV Superstores of these defects on November 27, 2019.

42. To date, the RV has been in the possession of Meyers RV Superstores and/or Noakers Body: Accident and Repair Service for maintenance and repair for a longer period of time that than it has been in the Wintermyers' possession and despite the lengthy repair history, the Wintermyers are still experiencing significant issues with the RV.

### COUNT I – BREACH OF EXPRESS WARRANTIES UNDER THE UNIFORM COMMERCIAL CODE § 2-313 AND PENNSYLVANIA UNIFORM COMMERCIAL CODE 13 PA.C.S.A. § 2313

43. Plaintiffs incorporate by reference, as if fully set forth herein, the facts and allegations set forth in the foregoing paragraphs.

44. This claim arises out of damages caused by Defendants' express warranties to the Wintermyers regarding the RV including, without limitation, its condition and operation, as brand new and free from manufacturing defects.

45. Defendants' affirmation of fact or promises and descriptions constitute an express warranty by affirmation, promise, description or model within the meaning of Section 2-313 of the UCC and Section 2313 of the Pennsylvania Uniform Commercial Code.

46. Defendants' express warranty by affirmation, promise, description or model created the basis of the bargain for the Wintermyers.

47. The Wintermyers relied on those express warranties in agreeing to purchase the RV.

48. Defendants breached those express warranties by failing to tender an RV that was indeed brand new and free from manufacturing defects, as set forth at length above, or otherwise in conformity with Defendants' express warranties.

49. As a direct, foreseeable, and proximate result of Defendants' breach of its express warranties, which is continuing as of the date of this Complaint, Plaintiffs have sustained, and will continue to sustain, significant monetary damages, including, without limitation, attorneys' fees and expenses incurred in seeking to enforce Defendants' expressed obligations. Plaintiffs are entitled to recover these damages from Defendants, as well as such other appropriate damages and relief permitted by law, all in amounts to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: (a) enter judgment in favor of Plaintiffs and against Defendants on Count I of this Complaint; (b) award to Plaintiffs, and against Defendants, compensatory damages in an amount necessary to compensate

Plaintiffs for Defendants' breach of their express warranties; and (c) award to Plaintiffs, and against Defendants, all other relief as this Court deems appropriate.

### COUNT II – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER THE UNIFORM COMMERCIAL CODE § 2-314(c) AND PENNSYLVANIA UNIFORM COMMERCIAL CODE 13 PA.C.S.A. § 2314

50. Plaintiffs incorporate by reference, as if fully set forth herein, the facts and allegations set forth in the foregoing paragraphs.

51. Defendants are merchants as that term is used under the Uniform Commercial Code and Pennsylvania Uniform Commercial Code.

52. The RV sold to Plaintiffs does not pass without objection in the trade under the warranty description.

53. The RV sold to Plaintiffs is not of fair, average quality.

54. The RV sold to Plaintiffs is not fit for the ordinary purposes for which such goods are used.

55. As a direct, foreseeable, and proximate result of Defendants' breach of its implied warranty, which is continuing as of the date of this Complaint, Plaintiffs have sustained, and will continue to sustain, significant monetary damages, including, without limitation, attorneys' fees and expenses incurred in seeking to enforce Defendants' implied obligations. Plaintiffs are entitled to recover these damages from Defendants, as well as such other appropriate damages and relief permitted by law, all in amounts to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: (a) enter judgment in favor of Plaintiffs and against Defendants on Count II of this Complaint; (b) award

to Plaintiffs, and against Defendants, compensatory damages in an amount necessary to compensate Plaintiffs for Defendants' breach of their implied warranties; and (c) award to Plaintiffs, and against Defendants, all other relief as this Court deems appropriate.

### COUNT III - BREACH OF MAGNUSON MOSS WARRANTY—FEDERAL TRADE COMMISSION IMPROVEMENT ACT 15 U.S.C. § 2301 *et seq.*

56. Plaintiffs incorporate by reference, as if fully set forth herein, the facts and allegations set forth in the foregoing paragraphs.

57. Defendants were either a supplier, warrantor, or authorized warranty repair representative under the Magnuson Moss Warranty—Federal Trade Commission Improvement Act.

58. The Wintermyers were each consumers.

59. The Wintermyers purchased the RV under a valid warranty.

60. Defendants advertised that the "Coverage Provided" was guaranteed "under normal use to be free from manufacturing defects…"

61. The RV was presented for repair during the warranty period.

62. The RV, or a component part thereof, contains several defects or malfunctions after a reasonable number of attempts by the Defendants to remedy the RV's defects or malfunctions.

63. Plaintiffs, therefore, may elect a refund for the RV.

64. Plaintiffs have been damaged as a result of Defendants' inability to conform the RV to the provisions of the warranty within a reasonable amount of time or number of repair attempts.

65. Specifically, as a direct, foreseeable, and proximate result of Defendants' breach of the Magnuson Moss Warranty-Federal Trade Commission Improvement Act, which is continuing as of the date of this Complaint, Plaintiffs have sustained, and will continue to sustain, significant monetary damages, including, without limitation, attorneys' fees and expenses incurred in seeking to enforce Defendants' obligations under the Magnuson Moss Warranty-Federal Trade Commission Improvement Act. Plaintiffs are entitled to recover these damages from Defendants, as well as such other appropriate damages and relief permitted by law, all in amounts to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: (a) enter judgment in favor of Plaintiffs and against Defendants on Count III of this Complaint; (b) award to Plaintiffs, and against Defendants, compensatory damages in an amount necessary to compensate Plaintiffs for Defendants' breach of the Magnuson Moss Warranty-Federal Trade Commission Improvement Act, including their reasonable attorneys' fees; and (c) award to Plaintiffs, and against Defendants, all other relief as this Court deems appropriate.

### COUNT IV – BREACH OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW 37 PA. CODE § 301.2

66. Plaintiffs incorporate by reference, as if fully set forth herein, the facts and allegations set forth in the foregoing paragraphs.

67. Plaintiffs are "persons" and "consumers" and engaged in one or more consumer transactions with Defendants within the meaning of applicable laws.

68. Defendants are a "person" or "supplier" or "merchant" within the meaning of applicable laws.

69. The Defendants advertised or presented the RV for sale.

70. Defendants referred to the warranty or guaranty in connection with that sale.

71. Defendants breached that warranty agreement, as set forth at length above.

72. Defendants failed to comply with all requirements of the Magnuson Moss Warranty-Federal Trade Commission Improvement Act.

73. Plaintiffs have been damaged as a result thereof.

74. Specifically, as a direct, foreseeable, and proximate result of Defendants' breach of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, which is continuing as of the date of this Complaint, Plaintiffs have sustained, and will continue to sustain, significant monetary damages, including, without limitation, attorneys' fees and expenses incurred in seeking to enforce Defendants' obligations under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Plaintiffs are entitled to recover these damages from Defendants, as well as such other appropriate damages and relief permitted by law, all in amounts to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: (a) enter judgment in favor of Plaintiffs and against Defendants on Count V of this Complaint; (b) award to Plaintiffs, and against Defendants, compensatory damages in an amount necessary to compensate Plaintiffs for Defendants' breach of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; and (c) award to Plaintiffs, and against Defendants, Plaintiffs' reasonable attorneys' fees and treble damages for Defendants' violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; and (d) award to Plaintiffs, and against Defendants, all other relief as this Court deems appropriate.

## **COUNT V - NEGLIGENCE**

75. Plaintiffs incorporate by reference, as if fully set forth herein, the facts and allegations set forth in the foregoing paragraphs.

76. Meyers RV Superstores owed Plaintiffs a duty of care while the RV was under its possession and control for repairs.

77. Meyers RV Superstores breached that duty when it backed another RV into the Wintermyers' RV and broke the window and grill of the Wintermyers' RV.

78. As a result of that breach, the Wintermyers' sustained damages in that their RV has undergone auto body collision repair work, which has diminished the value of the RV and resulted in damages to the RV that have yet to be repaired.

79. Specifically, as a direct, foreseeable, and proximate result of Meyers RV Superstores' negligence, which is continuing as of the date of this Complaint, Plaintiffs have sustained, and will continue to sustain, significant monetary damages, including, without limitation, attorneys' fees and expenses incurred in seeking to remedy the damages Plaintiffs sustained as a result of having another RV backed into their RV. Plaintiffs are entitled to recover these damages from Meyers RV Superstores, as well as such other appropriate damages and relief permitted by law, all in amounts to be determined at trial.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court: (a) enter judgment in favor of Plaintiffs and against Meyers RV Superstores on Count VI of this Complaint; (b) award to Plaintiffs, and against Meyers RV Superstores, compensatory damages in an amount necessary to compensate Plaintiffs for Meyers RV Superstores' negligence; and (c) award to Plaintiffs, and against Meyers RV Superstores, all other relief as this Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial.

                Respectfully submitted,

                BARLEY SNYDER

By:    */s/ Michael J. Crocenzi*
       Michael J. Crocenzi (PA ID #66255)
       100 East Market Street
       York, PA 17401
       Telephone: 717-718-7580
       Fax: 717-843-8492
       mcrocenzi@barley.com
       *Attorney for Plaintiffs*

Dated: December 6, 2019